|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **DISTRICT OF NEVADA** | |

|   |   |   |
|---|---|---|
| BANK OF AMERICA, N.A.,                    )  |   |
|                                            )  |   |
|              Plaintiff,                    )  | Case No.: 2:16-cv-02208-GMN-PAL |
|   vs.                                      )  |   |
|                                            )  | **ORDER** |
| TWILIGHT HOMEOWNERS                        )  |   |
| ASSOCIATION, *et al.*,                     )  |   |
|                                            )  |   |
|              Defendants.                   )  |   |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 47), filed by Bank of America, N.A. ("Plaintiff"). Defendant Twilight Homeowners Association ("HOA") filed a Response, (ECF No. 65), and Plaintiff filed a Reply, (ECF No. 69).

Also pending before the Court is HOA's Motion for Summary Judgment, (ECF No. 51). Plaintiff filed a Response, (ECF No. 64), and HOA filed a Reply, (ECF No. 68).

Also pending before the Court is Plaintiff's Motion to Amend Default Judgment Against Defendant Daly Property Management ("Daly"), (ECF No. 74).

For the reasons discussed below, Plaintiff's Motion for Summary Judgment is **DENIED**, HOA's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion to Amend Default Judgment Against Daly is **DENIED**.

I.  **BACKGROUND**

This case arises from the non-judicial foreclosure on real property located at 5971 Crumbling Ridge Street, Henderson, Nevada 89011 (the "Property"). (*See* Deed of Trust, Ex. A to Pl.'s Mot. Summ. J. ("MSJ"), ECF No. 47-1). On April 23, 2009, Thomas Townsend and Barbara Townsend (collectively "Borrowers") purchased the Property by way of a loan in the amount of $170,291.00 secured by a deed of trust ("DOT"). (*Id.*). The loan and the DOT were

insured by the Department of Housing and Urban Development ("HUD") via its Single Family Mortgage Insurance program ("HUD's mortgage insurance program"). (*see* Turner Decl., Ex. B to Pl.'s MSJ, ECF No. 47-2). Plaintiff gained beneficial interest in the DOT through an assignment recorded on November 10, 2011. (*See* Assignment, Ex. C to Pl.'s MSJ, ECF No. 47-3).

Upon Borrowers' failure to stay current on their payment obligations, Homeowner Association Services, Inc. ("HAS"), on behalf of HOA, initiated foreclosure proceedings by recording a notice of delinquent assessment lien. (*See* Notice of Delinquent Assessment Lien, Ex. D to Pl.'s MSJ, ECF No. 47-4). The notice of delinquent assessment explicitly states in boldface type: "*Includes Nuisance Abatement charge in the amount of $200.00." (*Id.*). The HOA subsequently recorded two notices of default and election to sell. (March 2012 Notice of Default, Ex. E to Pl.'s MSJ, ECF No. 47-5); (November 2012 Notice of Default, Ex. F to Pl.'s MSJ, ECF No. 47-6).

On April 12, 2012, the law firm Miles, Bauer, Bergstrom & Winters LLP ("Miles Bauer"), on behalf of Plaintiff, obtained a ledger from HOA, through its trustee HAS, identifying the amount owed as $2,518.21. (Pl.'s Mot. Summ. J. ("MSJ") 4:6–9, ECF No. 47); (*See* Statement of Account, Ex. 1 to Miles Aff., ECF No. 47-8). Based on the ledger, Plaintiff calculated what it determined to be the lien amount, "the sum of nine months of common assessments," and delivered a check to HAS for $243.00. (*See* Tender Letter, Ex. 2 to Miles Aff., ECF No. 47-8); (Confirmation of Receipt, Ex. 3 to Miles Aff., ECF No. 47-8).

Notwithstanding the alleged tender, HAS proceeded with the foreclosure by recording a notice of foreclosure sale and subsequently foreclosing on the Property. (*See* Notice of Trustee's Sale, Ex. G to Pl.'s MSJ, ECF No. 47-7). On August 28, 2014, RBBE Real Estate Investments LLC ("RBBE") recorded a foreclosure deed stating it purchased the Property for $17,000.00. (Foreclosure Deed, Ex. I to Pl.'s MSJ, ECF No. 47-9). RBBE subsequently

quitclaimed the Property to Defendant Daly on October 2, 2014. (Quitclaim Deed, Ex. K to Pl.'s MSJ, ECF No. 47-11).

Plaintiff filed the instant Complaint on September 20, 2016, asserting the following causes of action arising from the foreclosure and subsequent sale of the Property: (1) quiet title against Daly, RBBE,[1] HOA, and HAS; (2) breach of NRS 116.1113 against HOA and HAS; (3) wrongful foreclosure against HOA and HAS; and (4) injunctive relief against Daly. (*See* Compl. ¶¶ 34–94).

On November 14, 2018, the Honorable Judge Peggy Leen entered a Report and Recommendation, (ECF No. 66), stating that default judgment should be entered against Daly. Additionally, Judge Leen entered a Report and Recommendation, (ECF No. 67), stating that default judgment should be entered against HAS. No objections were filed. Accordingly, on December 10, 2018, the Court adopted Judge Leen's recommendations (ECF Nos. 71, 72), and entered default judgment against Daly and HAS, (ECF No. 73).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

---

[1] As RBBE has not appeared in this action, Plaintiff has moved for clerk's entry of default, (ECF No. 22), which the clerk of court subsequently entered, (ECF No. 23).

Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual

data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. <u>DISCUSSION</u>

Plaintiff moves for summary judgment on its claims against HOA asserting that the DOT survived because the foreclosure was conducted pursuant to a facially unconstitutional statute. (Pl.'s MSJ at 6–12, ECF No. 47). Plaintiff also asserts that summary judgment is warranted because Plaintiff properly tendered the superpriority portion of HOA's lien prior to the Property's foreclosure sale. (*Id.* at 13–16). Plaintiff further asserts that the sale should be set aside based on equitable grounds. (*Id.* at 16–21). Lastly, Plaintiff argues that the Supremacy Clause preempts NRS Chapter 116. (*Id.* at 25–28).

HOA moves for summary judgment on Plaintiff's quiet title claim arguing that the Miles Bauer check for $243.00 was insufficient to discharge the superpriority lien because the amount failed to include nuisance abatement charges. (HOA's MSJ at 11–14, ECF No. 51). HOA also moves for summary judgment on Plaintiff's claims for breach of NRS 116.1113 and wrongful foreclosure arguing, *inter alia*, that HOA complied with the notice and recording requirements of NRS Chapter 116, that it did not violate the CC&R's mortgagee protection clause, and that it

did not have a duty to identify the amount of super-priority lien in the recorded notices. (*Id.* at 16–22). The Court will address the parties' arguments in turn.[2]

**A. Constitutionality of Chapter NRS 116**

Plaintiff argues that the Ninth Circuit's decision in *Bourne Valley*, renders NRS Chapter 116 void as a violation of due process, thus invalidating the Property's 2014 foreclosure sale under that statutory scheme. (Pl.'s MSJ 6:3–13:2). In *Bourne Valley*, the Ninth Circuit held that NRS 116.3116's notice provisions violated lenders' due process rights because the scheme "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Bourne Valley*, 832 F.3d at 1159. The Ninth Circuit, interpreting Nevada law, declined to embrace the appellant's argument that NRS 107.090, read into NRS 116.31168(1), mandates that HOAs provide notice to lenders even absent a request. *Id.* Accordingly, the absence of mandatory notice provisions rendered the statutory scheme facially unconstitutional. *Id.* at 1158–60.

*Bourne Valley*'s construction of Nevada law is "only binding in the absence of any subsequent indication from the [Nevada] courts that [the Ninth Circuit's] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). "[W]here the reasoning or theory of . . . prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, [a court] should consider itself bound by the later controlling authority . . . ." *Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003). "[A] [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982)

---

[2] In each of the parties' respective filings, arguments regarding quiet title, breach of NRS 116.1113, and wrongful foreclosure are often presented together. Indeed, the briefs rarely identify which particular cause of action is being addressed.

("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation.").

In *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, the Nevada Supreme Court expressly declined to follow *Bourne Valley* and held that NRS 107.090 is incorporated into NRS 116.31168, thus requiring that HOAs "provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." 422 P.3d 1248, 1253 (Nev. 2018) (en banc). As this Court previously explained, the Nevada Supreme Court's holding is clearly irreconcilable with the Ninth Circuit's finding of unconstitutionality because the Ninth Circuit premised its conclusion on NRS Chapter 116's lack of mandatory notice provisions. *Christiana Tr. v. SFR Invs. Pool 1, LLC*, No. 2:16-cv-00684-GMN-CWH, 2018 WL 6603643, at *3 (D. Nev. Dec. 17, 2018). Because the Nevada Supreme Court has since interpreted NRS Chapter 116 as mandating notice, the rationale underlying the *Bourne Valley* decision no longer finds support under Nevada law. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (recognizing that cases are "clearly irreconcilable" where the "relevant court of last resort . . . undercut[s] the theory or reasoning underlying the prior circuit precedent."); *see, e.g*, *Toghill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017).

In sum, *Bourne Valley*'s holding that NRS Chapter 116 is facially unconstitutional is clearly irreconcilable with the Nevada Supreme Court's subsequent pronouncement. Because the Nevada Supreme Court has final say on the meaning of Nevada statutes, *Bourne Valley* is no longer controlling authority with respect to NRS 116.3116's notice provisions and, consequently, its finding of facial unconstitutionality. Accordingly, to the extent Plaintiff, in its instant Motion, seeks to prevail based upon *Bourne Valley*, the Court rejects this theory.

///

**B. Tender of the Superpriority Portion of HOA's Lien**

Under NRS 116.3116, the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014). "[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc). "[T]he superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117; *see also Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 373 P.3d 66, 72 (Nev. 2016).

Plaintiff argues that its DOT was not extinguished by the sale because it relied on the ledger provided by HOA's trustee, HAS, and tendered a check for nine months' worth of assessment fees. (Pl.'s MSJ 14:12–15:13); (Pl.'s Reply 3:5–4:7, ECF No. 69). Plaintiff argues, based on *Bank of America., N.A.*, that it was "entitled to rely on an HOA's ledger," and that because the ledger contained no nuisance abatement charges its failure to tender those charges and the subsequent foreclosure sale did not extinguish its DOT. (Pl.'s Reply 3:24–4:6).

In *Bank of America., N.A.*, the HOA recorded a notice of delinquent assessment lien and a notice of default and election to sell. *Bank of Am., N.A.*, 427 P.3d at 116. The holder of the deed of trust, Bank of America, then contacted the HOA to clarify the superpriority amount. *Id.* The HOA's accounting showed that nine months' worth of assessments totaled $720.00, and did not indicate charges for nuisance abatement. *Id.* at 118. As such, Bank of America sent a check to the HOA for $720.00. *Id.* But, "[t]he HOA refused to accept Bank of America's tender, because it did not satisfy both the superpriority and subpriority portions of the lien." *Id.* at 117. The Nevada Supreme Court held that "[o]n the record presented, [nine months of delinquent assessment fees] was the full superpriority amount." *Id.* at 118. Further, the court

was not persuaded by the argument that at the time of the tender in 2012, "the payment required to satisfy the superpriority portion of an HOA lien was legally unsettled." *Id.* The HOA's rejection of Bank of America's tender could not be justified on that basis because a plain reading of the relevant statute "indicates that the superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117. Accordingly, the court found that Bank of America's tender was valid, and the buyer took the property subject to Bank of America's deed of trust. *See id.* at 116, 121.

However, Plaintiff has not shown that the facts in *Bank of America, N.A.* are "materially identical" to the instant facts. (Pl.'s Resp. 4:23, ECF No. 64). To begin with, there was no dispute regarding charges for nuisance abatement in *Bank of America, N.A.* The HOA in that case rejected Bank of America's tender because it did not satisfy both the superpriority and subpriority portions of the lien. Thus, Plaintiff's focus on *Bank of America, N.A.*'s limited analysis as to nuisance abatement charges is misplaced. Moreover, in the present case, HOA recorded a notice of delinquent assessment lien against the Property that explicitly stated that the amount owing "*Includes Nuisance Abatement charge in the amount of $200.00." Given that the notice was properly recorded, Plaintiff had actual or constructive notice that the amount of the lien included superpriority portion assessments, including nuisance abatement charges. *See SFR Investments Pool 1, LLC v. Wells Fargo Bank, N.A.*, No. 2:13-cv-1153-APG-NJK, 2014 WL 1256065, at *1, *7 (D. Nev. Mar. 26, 2014). As HOA points out, this is distinguishable from *Bank of America, N.A.* because the facts in that case do not indicate that the deed holder had notice of additional superpriority assessments and that it failed to tender them. (HOA's Reply at 4, ECF No. 68). Indeed, the Nevada Supreme Court found that, "[o]n the record presented," the sum of nine months' worth of delinquent assessments was sufficient to satisfy the superpriority portion of the HOA's lien. *Bank of Am., N.A.*, 427 P.3d at 117.

Contrary to Plaintiff's assertions, the court did not broadly assert that "a lender was entitled to rely on an HOA's ledger." (Pl.'s Reply 3:24–26). Nor did the court hold that "[i]f the ledger does not identify the charges, the tender need not contain them in order to protect the deed of trust." (*Id.* 4:1–2). As such, *Bank of America, N.A.* does little to substantiate Plaintiff's argument as to valid tender.

In sum, Plaintiff had notice of charges for nuisance abatement by way of the notice of delinquent assessment lien that HOA recorded. Therefore, by providing a check for only nine months' worth of unpaid assessments, Plaintiff failed to satisfy the superpriority portion of HOA's lien and the foreclosure sale extinguished Plaintiff's DOT.[3]

## C. Equitable Grounds for Setting Aside the Sale

Plaintiff argues that the Court should equitably set aside the sale based upon the Property's grossly inadequate sale price. (Pl.'s MSJ 16:16–17:5). According to Plaintiff, the purchase of the Property for $17,000.00 represented 11 percent of the Property's fair market value and, therefore, the sale price is inadequate as a matter of law. (*Id.* 16:21–24).

However, even accepting this proposition as true, "mere inadequacy of price is not in itself sufficient to set aside the foreclosure sale, but it should be considered together with any alleged irregularities in the sales process to determine whether the sale was affected by fraud, unfairness, or oppression." *Nationstar Mortgage, LLC v. Saticoy Bay LLC Series 2227 Shadow*

---

[3] Plaintiff also attempts to refute the nuisance abatement charges by stating there is "no evidence [HOA] ever claimed it followed the procedures set forth in NRS 116.310312 to enter the property and incur maintenance and nuisance abatement expenses. There is no evidence of a notice to the homeowner, opportunity to cure, or a hearing. [HOA] cannot simply point to a footnote in its notice of lien to establish its superpriority lien included such charges, especially when the ledger it provided to [Plaintiff] to establish the amount and components of its lien contains no such charges." (Pl.'s Resp. 6:25–7:3, ECF No. 64). However, HOA has provided evidence showing that "[d]espite receiving notice and an opportunity to cure, including being notified of the hearing, the Borrowers did not attend the August 2, [2010] hearing or correct the condition [of the landscape in their front yard]. As a result, the HOA reinspected the Property to confirm the clean-up had not occurred and held another hearing on August 18, 2010. During that hearing, the Board assessed the Borrowers $200.00 to have a landscape company enter the Property and fix the landscape issues." (HOA's Reply 11:25–12:11, ECF No. 68); (Northfield Aff. ¶¶12–15, Ex. 1 to HOA's Reply, ECF No. 68-1).

*Canyon*, 405 P.3d 641, 648 (Nev. 2017) (declining to adopt a bright-line rule to equitably set aside a sale "based solely on price.").

Plaintiff argues that the sale was affected by unfairness and oppression because the HOA's CC&Rs represented that its superpriority lien "would be subordinate to the deed of trust," and that enforcement of its lien would not impair the rights of the beneficiary under the deed of trust. (Pl.'s MSJ 20:1–8). But, the Nevada Supreme Court has repeatedly held that an HOA's CC&Rs, including those that provide for mortgagee protection, do not supersede the statutory structure of NRS Chapter 116. *See SFR Invs. Pool 1*, 334 P.3d at 418–19 ("'Nothing in [NRS] 116.3116 expressly provides for a waiver of the HOA's right to a priority position for the HOA's super priority lien.' . . . The mortgage savings clause thus does not affect NRS 116.3116(2)'s application in this case.") (citation omitted); *Ikon Holdings*, 373 P.3d at 73–74 (holding that an HOA's CC&R provisions in contravention of NRS Chapter 116 "are superseded by statute and are thus negated."); *see also RLP-Vervain Court, LLC v. Wells Fargo*, No. 65255, 2014 WL 6889625, at *1 (Nev. Dec. 5, 2014) (unpublished) (declining to consider certified question of "whether an association may validly subordinate its assessment lien" in its CC&Rs because "there is controlling Nevada precedent" on point).

Additionally, other than the existence of the mortgagee protection clause itself, Plaintiff has not pointed to evidence of resulting unfairness, such as chilled bidding. Even if Plaintiff did adduce evidence that potential bidders had notice of HOA's CC&Rs, it is "presumed that any potential bidders also were aware of NRS 116.1104." *US Bank, N.A. v. SFR Invs. Pool 1, LLC*, No. 71414, 414 P.3d 809, 2018 WL 1448248, at *2 (Nev. 2018) (unpublished) (citing *Smith v. State*, 151 P. 512, 513 (Nev. 1915) ("Every one is presumed to know the law and this presumption is not even rebuttable.")). The Court accordingly rejects this argument.

Plaintiff next argues that the sale was unfair and oppressive because at the time of the HOA foreclosure, all the parties faced massive legal uncertainty. (Pl.'s MSJ 20:9–20). The

Nevada Supreme Court, however, has declared that Nevada law during this time period was not undecided with respect to a lender's ability to protect its senior deed of trust. *Bank of Am., N.A.*, 427 P.3d at 118. Thus, the Court is not persuaded that the purported legal uncertainty establishes oppression or unfairness.

Lastly, Plaintiff argues unfairness and oppression based on "HOA's inadequate foreclosure sale notices" and their failure to indicate the superpriority amount and explaining how it was incurred. (Pl.'s MSJ 20:21–21:4). However, this argument fails. As another court in this District recognized, "[t]he fact that a notice does not identify a superpriority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests." *Bank of Am., N.A. v. Saticoy Bay LLC Series*, No. 2:17-cv-02808-APG-CWH, 2018 WL 3312969, at *3 (D. Nev. July 5, 2018). The Nevada Supreme Court has also rejected the argument that foreclosure notices must always state the super priority portion, reasoning, in part, that "[t]he notices went to the homeowner and other junior lienholders, not just [the first deed of trust holder], so it was appropriate to state the total amount of the lien." *SFR Invs. Pool 1*, 334 P.3d at 418. Accordingly, Plaintiff has not established equitable grounds to set aside the sale.[4]

**D. Supremacy Clause**

Plaintiff's final argument against the extinguishment of its DOT arises from the DOT's HUD-insured status at the time of the Property's foreclosure sale. (Pl.'s MSJ 25:19–28:27); (*see* Turner Decl., Ex. B to Pl.'s MSJ, ECF No. 47-2). According to Plaintiff, NRS Chapter 116's statutory scheme substantially interferes with HUD's mortgage insurance program. (Pl.'s

---

[4] Plaintiff also argues that the sale was affected by unfairness and oppression because Plaintiff tendered the entire superpriority portion of HOA's lien in advance of the sale and thus it would be "inherently unfair" for HOA to pass title to the Property free and clear of Plaintiff's DOT. (Pl.'s MSJ 19:19–27). However, this argument is without merit because as discussed in Part III.B *supra*, Plaintiff failed to tender the full superpriority amount.

MSJ at 27–28). Thus, under preemption principles, Plaintiff contends that this interference renders NRS Chapter 116's scheme inapplicable in this matter. (*Id.*).

On the merits of this preemption issue, this District and the Nevada Supreme Court have held that HUD's mortgage insurance program does not inherently conflict with NRS Chapter 116's foreclosure scheme because, *inter alia*, the program and corresponding guidelines "clearly contemplate and anticipate statutory schemes such as NRS 116.3116." *Renfroe v. Lakeview Loan Servicing, LLC*, 398 P.3d 904, 909 (Nev. 2017); *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1184 (D. Nev. 2015); *JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1, LLC*, 200 F. Supp. 3d 1141, 1166 (D. Nev. 2016) ("The Court concludes that conflict preemption does not apply in this case. Lenders are perfectly capable of complying with both HUD's program and NRS 116.3116 . . . ."). Indeed, "[n]othing prevents a lender from simultaneously complying with the HUD's program and Nevada's HOA-foreclosure laws." *Freedom Mortg. Corp.*, 106 F. Supp. 3d at 1184.

Although this Court has previously found that HUD's mortgage insurance program preempts NRS Chapter 116's statutory scheme, the decisions cited above persuasively explain that the "conflict" between NRS Chapter 116's scheme and the program is not a conflict of laws, but one that is created by a lender's inaction. In line with that approach, the Court does not find federal preemption to be an avenue that prevents the extinguishment of Plaintiff's DOT.

Based upon the foregoing, the Court concludes that Plaintiff does not have a recognizable interest in the Property under the quiet title or equitable grounds claimed. On the other hand, based on the evidence before the Court, HOA has demonstrated compliance with NRS Chapter 116. Thus, the validly conducted foreclosure sale extinguished Plaintiff's DOT.

///

Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED** and HOA's Motion for Summary Judgment is **GRANTED**. [5]

### E. Plaintiff's Motion to Amend Default Judgment

In Plaintiff's Motion to Amend Default Judgment, Plaintiff requests that the Court amend its Order entering default against Daly to confirm that Daly acquired the Property subject to Plaintiff's DOT and that the DOT was not extinguished by the 2014 foreclosure sale of the Property. (Mot. to Amend 3:9–15, ECF No. 74). However, for all the reasons discussed above, the Court finds that the 2014 foreclosure sale of the Property extinguished Plaintiff's DOT, and therefore, Daly did not acquire the Property subject to Plaintiff's DOT. Accordingly, Plaintiff's Motion to Amend is **DENIED**.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 47), is **DENIED**.

**IT IS FURTHER ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 51), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Default Judgment, (ECF No. 74), is **DENIED**.

The Clerk of the Court shall enter judgment accordingly and close the case.

**DATED** this __30__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court

---

[5] The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the instant motions.